IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARY LEE SMITH,

      Petitioner,

v.                              Case No.: 5:17-CV-139-MCR/MJF

BRUCE A. BLACKMON, WARDEN,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the Second Amended Petition under 28 U.S.C. § 2241. (Doc. 8). The original petition in this case was filed in May of 2017. (Doc. 1). Warden Blackmon responded to the petition (Doc. 18), and Petitioner replied. (Doc. 23). For the reasons set forth below, the undersigned respectfully recommends that the petition be denied.

## I.    Background

On April 18, 2008, the Bureau of Prisons ("BOP") filed an incident report charging Petitioner with "preparing or conducting a gambling pool," in violation of code 325.[1] (Doc. 18-3 ¶ 9). The incident report describes a BOP employee observing

_____

[1]The "code" referred to here is part of the Code of Federal Regulations and is described at Federal Bureau of Prisons, *Inmate Discipline Program - Table 1:*

Petitioner "pull a sheet of gambling slips out of the copy machine." (*id.* at ¶ 11). Petitioner was observed placing the gambling slips into a manila folder. (*id.*). BOP staff approached Petitioner and instructed him to relinquish the folder. (*id.*). Inside the folder was a handwritten sheet with baseball teams, game times, over and under numbers, a large typed gambling slip, copies of the large gambling slip shrunk down and taped to a sheet of copy paper, and 18 copies of the taped gambling slip sheet. (Doc. 18-3 ¶ 11). Petitioner had typed these gambling sheets on a typewriter in the Law Library. (*id.*). Copies of the betting slips are included in Exhibit 4 to the Response. (Doc. 18-4).

Once the incident report was prepared, as part of the disciplinary process, a BOP lieutenant investigated the allegations as written on the incident report. (*id.* at ¶ 23). This investigation involved obtaining a statement from Petitioner, and he readily admitted that he possessed gambling paraphernalia. (*id.* at ¶ 24). On April 18, 2008, at 2:50 p.m., BOP staff provided the Petitioner with advance written notice of the charge. (*id.* at ¶¶ 15-16). On April 21, 2008, this incident was referred to the Discipline Hearing Officer ("DHO") for disposition. (*id.* at ¶ 19).

Eight days later, on April 29, 2008, Petitioner had his hearing before the DHO. Discipline Hearing Report No. 1723518 ("DHO Report 1723518"), April 29, 2008.

---

*Prohibited Acts and Available Sanctions*, available at
https://www.bop.gov/policy/progstat/5270_009.pdf. *See* 28 C.F.R. § 541.3

(Doc. 18-4). Section III.B. of DHO Report 1723518 states that the factual portion of the incident report was "read aloud by the DHO to the inmate" and that "Inmate Smith[] then made the initial statement: 'I was not conducting anything. I had the gambling sheets in my possession but that does not mean I was conducting pools or gambling.'" (*id.* at 2). Section V of DHO Report 1723518 is titled "Specific evidence relied on to support findings" and sets out the DHO's finding that Petitioner committed an act prohibited by Code 326, "Possession of Gambling Paraphernalia," rather than the original charge alleging a violation of Code 325, "Preparing or Conducting a Gambling Pool." (*id.* at 2-3). The DHO found as follows:

> The DHO considered your statement and defense to the charge against you. While it was clear to the DHO you were in fact in the process of conducting a gambling pool, Section 11 of the report was more reflective of Code 326, Possession of Gambling Paraphernalia. Spread sheets, copied in such quantities, could only have one purpose. It is noted that you did not dispute the fact you had the contraband in your possession, nor did you refute that you were using them for the purpose of gambling. Your only contention was that it did not prove you were gambling. Likewise, the DHO's decision is not based on whether or not you were in the process of gambling, simply that you had the items, used solely for the purpose of gambling, in your possession. The greater weight of the evidence clearly supports the finding of the DHO.

(Doc. 18-4 at 4). The DHO then imposed a sanction of disallowing fourteen days of good conduct time. (*id.*).

DHO Report 1723518 informed the Petitioner that he had 20 calendar days to appeal this action. (Doc. 18-4 at 4); *see* 28 C.F.R. § 542.14(a)–(b). Section IX of DHO Report 1723518 contained two signature lines. The first contained the

signature of Curtis Hise, who appears to be the Discipline Hearing Officer. The signature was dated May 23, 2008. The second signature line is entitled "Report delivered to inmate by:" but contains no signature on the blank line. (Doc. 18-4 at 5). Also, various pages in Exhibit 4 to the Response set out Petitioner's rights during the DHO hearing and state that these pages were given to Petitioner. These have a place for Petitioner's signature, but do not contain his signature, stating instead that Petitioner could not sign because he was restrained or cuffed from behind. (Doc. 18-4).

Petitioner did not appeal within 20 calendar days. Instead, his DHO Appeal was received on September 18, 2008, more than four months after his hearing and more than three months after the date of the DHO Report. (Doc. 18-2). Prison officials returned the appeal to him with the following remarks:

> DHO REPORT IS SIGNED / DATED 05-28-08.  YOU WILL NEED A MEMO FRM STAFF ON BOP LETTERHEAD PROVIDING RATIONALE FOR DELAY.

(*id.*).

Petitioner appealed the September 2008 decision to the regional office, but the Regional Director rejected the appeal on November 5, 2008, directing the Petitioner that he needed to follow the directive of the DHO above (by seeking a written explanation for the delay on BOP letterhead) and wait for the institution's response. (*id.*). Petitioner then appealed that ruling to the General Counsel, and his appeal was

rejected on November 5, 2008, with the remark, "CONCUR WITH THE REGION'S REJECTION." Thus, Petitioner had one full round of appeals within the BOP's system by November of 2008. *See* 28 C.F.R. §§ 542.14-15 (setting out the appellate provisions of the BOP's grievance procedures).

Petitioner does not allege that he took any other action on this matter until 2012. He alleges in his Second Amended Petition that "Disciplinary Report Number 1723518 was delivered to Mr. Smith on February 16, 2012, by Counselor Jason Jarrett. It is this 'version' of the incident report that Mr. Smith is appealing." (Doc. 8 at ¶ 2). He then explains, in his Second Amended Petition and in his Reply at Doc. 23, that he timely filed a DHO appeal within twenty days of that date, Second Am. Pet. at ¶ 3, and timely appealed the matter up to the BOP which refused to accept the appeal on July 12, 2012. Petitioner does not explain why he waited until 2017 to file suit based on the 2012 rejection of his appeal.

## II.    Discussion

### A.    <u>Due Process in Prison Disciplinary Proceedings</u>

In the instant case, Petitioner alleges that a prison disciplinary hearing resulted in him losing fourteen days of good time credits. (Memorandum of Law attached to Doc. 8 at ¶ 9).

"The deprivation of good time is unquestionably a matter of considerable importance" and must afford an inmate due process. *Wolff v. McDonnell*, 418 U.S.

539, 561, 94 S. Ct. 2963, 2977 (1974); *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011). "Prisoners' rights are subject to restrictions imposed by the nature of the regime to which they have been lawfully committed," however. *Kyle v. Hanberry*, 677 F.2d 1386, 1389 (11th Cir. 1982). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975.

Where a prison disciplinary hearing may result in the loss of good time credits, an inmate must receive: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 564-65, 94 S. Ct. at 2978-79; *O'Bryant*, 637 F.3d at 1213; *Young v. Jones*, 37 F.3d 1457, 1459-60 (11th Cir. 1994); *Battle v. Barton*, 970 F.2d 779, 782 (11th Cir. 1992). In addition, an inmate generally has a right to be present during his disciplinary hearing, unless institutional safety or correctional goals outweigh this right in a particular case. *Battle*, 970 F.2d at 782-83.

The Supreme Court also addressed the quantum of evidence necessary to support the factfinder's decision. In *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774 (1985), the Court held: "revocation of good

time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472 U.S. at 454 (citation omitted). The Court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced" . . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455, 105 S. Ct. at 2774 (citations omitted); *see also Young*, 37 F.3d at 1460 (observing that the federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing," rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination").

The Eleventh Circuit has held that the provision of an administrative grievance process, including appeals, is not constitutionally mandated beyond the protections guaranteed by *Wolff* and its progeny. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (prisoners have no constitutionally protected liberty interest in having access to prison grievance procedures); *see also Fla. Dep't of Corr.*, 578 F. App'x 836, 839 (11th Cir. 2014) (holding that allegations that a prison mishandled grievance procedures failed to state a due process violation because

prisoners have no constitutionally protected liberty interest in access to prison grievance procedures); *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (holding that a prisoner had no constitutionally protected liberty interest in access to prison's grievance procedure); *Mathews v. Moss*, 506 F. App'x 981, 984 (11th Cir. 2013) (allegations that prison grievances were either ignored or wrongly decided, or that prison officials did not properly follow grievances procedures, failed to state a constitutional violation).

Thus, a prisoner fails to state a federal Due Process violation by alleging that prison officials mishandled an appeal. *Vega v. Jones*, No. 3:15-CV-407/MCR/EMT, 2016 WL 5024212, at *1 (N.D. Fla. Sept. 16, 2016) (adopting *Vega v. Jones*, No. 3:15-CV-407/MCR/EMT, 2016 WL 5019197 (N.D. Fla. Mar. 21, 2016)).

### B.    <u>Exhaustion of Administrative Remedies Requirement</u>

Challenges to prison disciplinary proceedings that resulted in the loss of good time credits are properly construed as habeas corpus claims. *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S. Ct. 1827, 1835 (1973). Title 28 U.S.C. § 2241 provides a limited basis for habeas actions brought by federal prisoners challenging the execution of a sentence, as opposed to the sentence or conviction itself. *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351 n.1, 1352 (11th Cir. 2008); *see Abdulhaseeb v. Ward*, 173 F. App'x 658, 659 n.1 (10th Cir. 2006) (claims

challenging the deprivation of good time credits and other prison disciplinary matters attack the execution of a sentence and should be pursued via § 2241).

Federal prisoners seeking habeas relief under § 2241 must exhaust their administrative remedies before habeas relief can be granted. *Skinner v. Wiley*, 355 F.3d 1293, 1294-95 (11th Cir. 2004); *see Santiago–Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). To exhaust remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Bryant v. Rich*, 530 F.3d 1368, 1378-79 (11th Cir. 2008) ("Because [Petitioner] did not pursue a good cause waiver after his appeal was dismissed as untimely, he did not fully exhaust the administrative remedies available to him.").

The administrative remedies available under BOP's Administrative Remedy Program are as follows. First, a prisoner is to submit a formal written Administrative Remedy Request within "20 calendar days following the date on which the basis for the Request occurred" or within the time frame of any extension that is allowed. 28 C.F.R. § 542.14(a)–(b). When a prisoner seeks to appeal a DHO finding, the formal Request is to be submitted directly to the appropriate regional office. 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal . . . to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The time

limits may be extended upon a showing of a valid reason for the delay. *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*

### C.  Ground One:  Due Process Claim Based on the 2012 Rejection of Petitioner's Administrative Appeals

In Ground One, Petitioner argues that BOP denied him due process of law in 2012 when it refused to accept his second round of appeals of the 2008 decision of the hearing officer set out in DHO Report 1723518. In Ground One, petitioner does not argue that his disciplinary hearing in 2008 itself lacked the procedures which were due under *Wolff* and *Hill* (although he does that in Grounds Two and Three). Moreover, he does not argue in Ground One that the Regional Director and General Counsel violated his federal due process rights by mishandling his administrative appeals in 2008. Instead, he argues that the Regional Director and the General Counsel violated his federal due process rights by declining to accept his 2012 attempts to appeal *for a second time* the 2008 disciplinary finding set out in DHO Report 1723518.

As noted above, however, BOP regulations only provide one appeal to the Regional Director and one appeal of the Regional Director's decision to the General Counsel.  28 C.F.R. § 542.14-15. Nothing in the BOP regulations require a second round of appeals, and Petitioner points to no case law creating or acknowledging the existence of any right to a second round of appeals. Therefore, the DHO, Regional Director and General Counsel were correct in rejecting Petitioner's 2012 appeal

because the record showed that Petitioner had already had a full round of appeals in 2008 in which he could have attempted to explain the untimeliness of his September 2008 appeal.

Additionally, as noted above, allegations that prison officials did not properly follow grievance procedures fail to state a constitutional due process violation. *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011). Here, Petitioner at best argues in Ground One that prison officials did not properly follow the appeal provisions of the BOP's grievance procedures. Under *Bingham* and the other cases cited above, such allegations do not state federal due process claims and are not cognizable on habeas review.

Also, to the extent Petitioner argues that he was denied an effective round of appeals in 2008 because he did not receive the 2008 DHO Report until 2012, such allegations also do not state a federal habeas claim. First, a close reading of the Second Amended Petition and Petitioner's Reply (Doc. 23) reveals that Petitioner does not explicitly deny that he received DHO Report 1723518 before 2012. The closest he comes is in the 2012 Regional Administrative Remedy Appeal, where he argues, "The DHO report is untimely . . . a DHO Report should be issued within 15 days – not some three years, nine months later!" (Doc. 23). Thus, Petitioner *implies* that he did not receive the 2008 DHO Report until 2012, but he does not expressly make that claim. It strains credulity to suggest that the BOP did not provide

Petitioner the 2008 DHO Report *until 2012,* four years after the fact. Petitioner offers no explanation or evidence to support such a claim.

Petitioner also does not explain why—when he filed an untimely appeal in September 2008—he did not alert the BOP that it failed to provide him with DHO Report 1723518. Second, Petitioner does not allege that he raised this issue at the final level of that round of appeals in November of 2008, even though the untimeliness of his appeal was the basis of the September 2008 rejection. Third, he does not allege that he took any actions between November 2008 to May 2012 to obtain the DHO Report from the BOP. All of this belies Petitioner's suggestion that he was oblivious to, or unable to adequately appeal the 2008 DHO Report.

Additionally, even if Petitioner had truly not received the Report until 2012, his claim in Ground One still lacks merit. Pursuant to the Supreme Court's decisions in *Wolff* and *Hill*, Petitioner was entitled to a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 564, 94 S. Ct. at 2979 (internal quotation omitted).  However, to state a violation of due process, a petitioner must allege and establish that he suffered prejudice from the lack of a written statement. *Dasher v. Stripling*, 685 F.2d 385, 387 (11th Cir. 1982), *on reh'g*, 714 F.2d 1084 (11th Cir. 1983) ("to constitute a violation of due process, prejudice must be shown"); *see Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (holding that, when a petitioner alleged that he did not receive the

DHO's written report but was unable to allege how he would have used that Report in his appeal, "[i]n the absence of a showing of prejudice, we cannot say that [Petitioner] was denied the process he was due.").

In the instant case, Petitioner has failed to allege that he was prejudiced by the BOP's alleged failure to promptly provide him with a copy of the DHO report. BOP regulations permit an inmate like Petitioner to proceed through the administrative appeal process without a written DHO report so long as he states in his appeal the date of the hearing and the nature of the charges against him. *See* 28 C.F.R. § 541.15(b)(3). In fact, the BOP's grievance records show that Smith appealed the decision in September of 2008, Remedy #5088886-R1. As noted above, it was rejected as untimely, but without prejudice to petitioner providing a memo from a staff member stating the rationale for the delay. Petitioner does not allege that he made any attempt to re-file the appeal with the required documentation. Also, Petitioner does not explain which portions of the DHO's written report he would have challenged if it had been in his possession. In the absence of such a showing of prejudice, the undersigned "cannot say that Petitioner was denied whatever process he was due." *Griffin*, 640 F. App'x at 184. Ground One, therefore, is without merit.

### D.   <u>Ground Two:  Sufficient Notice of the Violation</u>

In Ground Two, Petitioner argues that he was convicted of possession of gambling paraphernalia, in violation of code 326, without advance notice.

Specifically, he claims that the notice he received charged him with preparing or conducting a gambling pool, in violation of code 325, but he was found to be in violation of code 326 (possession of gambling paraphernalia).

### 1.    *Failure to Exhaust Administrative Remedies*

As an initial matter, Plaintiff has never exhausted his administrative remedies regarding this claim. Prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements. *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015); *Dill v. Holt*, 371 F.3d 1301, 1302 (11th Cir. 2004). To exhaust remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Bryant v. Rich*, 530 F.3d 1368, 1378-79 (11th Cir. 2008) ("Because [Petitioner] did not pursue a good cause waiver after his appeal was dismissed as untimely, he did not fully exhaust the administrative remedies available to him."). The exhaustion requirement is satisfied only through the proper use of the available administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 2385-86 (2006). Furthermore, "exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91, 126 S. Ct. at 8386.

Here, Petitioner attempted to raise this claim in his appeal from the DHO Report. However, he failed to timely appeal or to follow the directive of the prison officials to seek a good cause waiver after his appeal was dismissed as untimely. Therefore, he has not exhausted his administrative remedies as to this Ground. *See Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994) (holding that an "inmate has not fully exhausted his administrative remedies until he has appealed" through all levels of the BOP process). For that reason alone, Ground Two must be rejected.

## 2.   *Advance Notice of The Charges*

In Ground Two, Petitioner argues that the did not receive the advance notice required under *Wolff* and its progeny. In *Wolff*, the Supreme Court directed:

> [W]ritten notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before [the DHO].

*Wolff*, 418 U.S. at 564, 94 S. Ct. at 2979.

Here, Petitioner conceded that he was given advance notice of the facts underlying the charges against him and that he was given over twenty-four hours to marshal the facts and prepare his defense before the hearing.  (Memorandum of Law attached to Doc. 8 at ¶¶ 9-10) (alleging that Petitioner was charged on April 18, 2008, and that the hearing was on April 29, 2008). However, Petitioner argues that this notice was not effective because it charged him with "preparing or conducting

a gambling pool" in violation of code 325, but he was found to be in violation of a different provision: code 326, "possession of gambling paraphernalia." (*id.* at ¶¶ 16-17).

A nearly identical argument was rejected by the Eleventh Circuit in *Santiago-Lugo v. Warden*, 785 F.3d 467, 470 (11th Cir. 2015). The petitioner in *Santiago-Lugo* received an incident report that charged him with "BOP Code 108, Possession of a Cellular Phone," but the DHO found that he had violated "BOP Code 199, Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (Most like Possession of a Hazardous Tool; Cell Phone, Code 108)." *Santiago-Lugo*, 785 F.3d at 470. The Eleventh Circuit held that the DHO's amendment of the charge code did not violate the petitioner's due process rights because: (1) the incident report informed him that "he was charged with possessing and using a cellular phone, the same conduct that served as the basis for his violation of BOP Code 199;" (2) the only evidence the petitioner stated he would have presented at the DHO hearing if he knew of the changed charge code was "equally relevant" to the charge in the incident report; (3) the violations are subject to the same sanctions; and (4) the BOP's regulations allow a DHO to find "that an inmate 'committed the prohibited act(s) charged, *and/or a similar prohibited act(s)* as described in the [notice].'" *id.* at 476 (quoting 28 C.F.R. § 541.8(a)(1)). The Eleventh Circuit based its decision on the premise that "[t]he purpose of the advance notice

requirement . . . 'is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact.'" *Id.* (quoting *Wolff*, 418 U.S. at 564).

In the instant case, the incident report charged Petitioner with preparing or conducting a gambling pool (in violation of code 325) by possessing gambling paraphernalia in the form of betting sheets. Petitioner was found guilty of possessing gambling paraphernalia in the form of gambling sheets (in violation of code 326). As in *Santiago-Lugo*, the same conduct served as the basis of the charged offense and the offense of which Petitioner was found guilty. Also, BOP's regulations allow a DHO to find "that an inmate 'committed the prohibited act(s) charged, *and/or a similar prohibited act(s)* as described in the [notice].'" *Santiago-Lugo.* 785 F.3d at 476 (quoting 28 C.F.R. § 541.8(a)(1)). Possession of gambling sheets is similar to performing or conducting a gambling pool and would necessarily involve the same evidence. Likewise, any evidence that Petitioner would have submitted for one charge would be relevant to the other charge. The notice that BOP provided, therefore, afforded Petitioner an opportunity to marshal evidence in his defense and prepare arguments to persuade the BOP that he was innocent of the charged offense. He suffered no prejudice from the BOP amending the charge. Thus, Ground Two also is devoid of merit.

**E.**   **Ground Three:  Qualifications of the Unit Discipline Committee**

In Ground Three, Petitioner alleges that neither the Unit Discipline Committee nor the DHO were properly trained or certified and therefore should not have administered his discipline. Petitioner has offered no proof of his claims save for the lack of the BOP offering proof to the contrary.

### 1.   *Failure to Exhaust Administrative Remedies*

As discussed regarding Ground Two, Petitioner failed to timely appeal the DHO Report in 2008 and should have raised this issue in such an appeal. For the reasons given as to Ground Two, therefore, this claim also must be rejected for failure to exhaust administrative remedies.

### 2.   *BOP Program Statements Do Not Create Due Process Rights*

Ground Three also fails for lack of merit.  Alleged violations of BOP Program Statements by the DHO do not provide a basis for habeas relief independent of due process claims. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (prisoners have no constitutionally protected liberty interest in having access to prison grievance procedures); *Robles v. English*, No. 5:13-cv-6/MCR/EMT, 2013 WL 3797594, at *5-6 (N.D. Fla. July 19, 2013) ("A claim that the BOP violated its own Program Statements, when the Program Statements were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it

cannot be sustained in a habeas petition.") (citing *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011)).

Here, Petitioner failed to show either that the Unit Disciplinary Committee (UDC) or the Discipline Hearing Officer (DHO) were required by law to be trained or certified in a particular way. Furthermore, Petitioner also failed to provide evidence of any kind that the UDC members or DHO were not trained. "It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008); *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."); *Clayton v. Blackburn*, 578 F.2d 117, 120 (5th Cir. 1978) (noting that it is "the petitioner's burden in a habeas proceeding to demonstrate, at least prima facie, those facts that establish a constitutional violation").

Even if Petitioner had carried his burden and established a lack of training, his claim would still fail because Petitioner also failed to demonstrate that he would have suffered prejudice by the alleged lack of training. To state a violation of due process, Petitioner must allege and establish that he suffered prejudice. *Dasher v. Stripling*, 685 F.2d 385, 387 (11th Cir. 1982), *on reh'g*, 714 F.2d 1084 (11th Cir. 1983) ("to constitute a violation of due process, prejudice must be shown"); *see*

*Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96 (3d Cir. 2017) (holding that "due process is not violated absent a showing of prejudice").

Likewise, to prevail on a habeas petition generally, a petitioner must establish that he suffered prejudice. *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974) (observing that habeas relief "is not available when all that is shown is a failure to comply with the formal requirements" of a procedural rule "in the absence of any indication that the defendant was prejudiced by the asserted technical error") (internal quotation marks omitted); *Mackey v. Fed. Bureau of Prisons*, 440 F. App'x 373, 374-75 (5th Cir. 2011) (holding that an inmate could not prevail on his § 2241 petition when he failed "to establish that any of the alleged violations of federal regulations and/or BOP policy statements resulted in the required prejudice"); *Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (holding that a prerequisite to issuance of a writ of habeas corpus is showing of prejudice as a result of alleged constitutional violation).

Petitioner's failure to establish that he suffered any prejudice from the alleged lack of training is fatal to this claim. For these reasons, therefore, this claim also must be denied.

## III.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Petitioner's petition under 28 U.S.C. § 2241 be DENIED with prejudice.

2.    The Clerk of the Court be directed to close the case file.

At Panama City, Florida this 31st day of January 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.